# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| STEVEN IVERSON,<br><br>    Plaintiff,<br><br>vs.<br><br>DECO PRODUCTS COMPANY, LLLP,<br><br>    Defendant. | No. 19-CV-2008-KEM<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Plaintiff Steven Iverson brought suit against his former employer, Defendant Deco Products Company, LLLP, (Deco Products) after Deco Products terminated Iverson's employment the same day that a female employee made a sexual-harassment complaint against him. Doc. 5. He alleged several causes of action, including breach of contract based on an employee handbook and age and sex discrimination in violation of Iowa and federal law. *Id.* Deco Products now moves for summary judgment on all of Iverson's claims. Docs. 17, 19, 23. Iverson resists. Doc. 18. I find that Deco Products is entitled to summary judgment on all of Iverson's claims and thus **grant** the motion (Doc. 17).

## I. BACKGROUND

The following facts are recited in the light most favorable to Iverson, the nonmoving party. Deco Products is a hot injection molding company that makes specialty molded parts for its customers. Def. App. 18.[1] Iverson worked for Deco Products in the early 1980s as an inspector, and after taking classes in mechanical engineering at a community college, he began working for Deco Products in 1989 building and repairing molds. Def. App. 18, 29; Pl. App. 41.

---

[1] "Def. App." refers to Defendant's Appendix filed at Doc. 17-3. "Pl. App." refers to Plaintiff's Appendix filed at Doc. 18-2.

In 2014, a female coworker made a complaint to Deco Products about Iverson. *See* Def. SOF ¶ 10; Pl. Resp. SOF ¶ 10.[2] According to Iverson, he and the coworker were friendly, and he saw that she was having a bad day toward the end of the day on a Friday, so he walked up to her, put his hands on her hips, and said something along the lines of, "hang in . . . there, we're almost done." Pl. App. 23-25. After discussing the incident with her mother over the weekend, the female coworker complained to the Human Resources department. Pl. App. 26. Iverson was called in for a meeting with Human Resources and management about the incident, and he was told to keep his hands to himself. Pl. App. 27. He was given a written Employee Warning Notice, which categorizes the violation as "misconduct" and "harassment" and describes the incident as follows: "Swatted female employee on the bottom when she was at fountain. Unwelcome verbal or physical conduct of condescending nature – harassment. Employee has found this to be offensive along with witnesses." Def. App. 5. Iverson signed the notice sheet. *Id.*; Pl. App. 27. The notice indicates it is the "1st + Final" warning and states that "Failure to correct violation may result in termination." *Id.* There is also a handwritten notation on the notice that Iverson was told that "if he ever touched inappropriately again[,] he would be terminated," (*id.*) but Iverson testified at his deposition he did not remember being told that during the meeting or reading that when he signed the notice (Def. App. 28).

On July 19, 2017, another female coworker made a complaint about Iverson. Def. SOF ¶ 12; Pl. Resp. SOF ¶ 12. She told Human Resources that when she was in the break room washing her hands around 11:00 a.m., Iverson came up behind her to get his food out of the microwave and "swatted her behind." *Id.*; Def. App. 15. She stated that

---

[2] "Def. SOF" refers to Defendant's Statement of Facts filed at Doc. 17-1. "Pl. Resp. SOF" refers to Plaintiff's Response to Defendant's Statement of Facts filed at Doc. 26. "Pl. SOF" refers to Plaintiff's Statement of Facts filed at Doc. 18-1. "Def. Resp. SOF" refers to Defendant's Response to Plaintiff's Statement of Facts filed at Doc. 22.

this was not the first time Iverson "had done this same thing to her." Def. App. 15. That same day at around 1:30 p.m., Iverson met with two of his supervisors and a woman from Human Resources in a conference room. Def. App. 21; Pl. App. 41. When he walked into the room, Iverson saw a pink slip of paper on the table that he recognized as a termination slip, and the sexual harassment complaint that had been made against him earlier in the day was discussed. Def. App. 20-21. Iverson explained that he had touched the woman by accident: when he was reaching for the microwave door, she took a step back, and his hand accidentally brushed her rear end. Def. App. 20-21; Pl. App. 41. Iverson had never seen the woman before that day, and neither of them said anything when he accidentally touched her. Pl. App. 19-20, 28, 41. Iverson explained his side of the story at the meeting "several times," and he testified at his deposition that there was nothing else he wished he would have said.[3] Def. App. 28; Pl. App. 20-22. He asked whether he could be suspended for three days instead of terminated, and he was informed that the decision to terminate him had already been made. Pl. App. 42. When he left the meeting, Iverson knew that his employment had been terminated and that his termination was "because of th[e] incident" with the female coworker. Pl. App. 21.

At the time of his termination, Iverson was fifty-six years old. Pl. App. 41. He was replaced by a younger employee. Pl. App. 41. The only comment ever made to Iverson about his age occurred about a year before his termination. Pl. SOF ¶ 14; Def. Resp. SOF ¶ 14; Def. App. 30-31. A fellow toolmaker was showing two people around the tool room and told Iverson, "they're your replacements." Def. App. 30-31. The coworker who made this comment was on the same level as Iverson and not his supervisor, but he was good friends with Iverson's boss. *Id.* Iverson told his boss about the comment and asked if he was being replaced. *Id.* Iverson's boss made the coworker

---

[3] Iverson disputes this fact, but he cannot create a genuine dispute of material fact for purposes of summary judgment based solely on an affidavit that contradicts his earlier, unambiguous deposition testimony. *See Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983).

3

apologize to Iverson, and the coworker explained that he had been kidding and did not mean anything by the comment. *Id*.

Over the years during his employment with Deco Products, Iverson received employee handbooks. Iverson signed a form indicating he had received the employee handbook in 1981 and 1989. Def. App. 6-7. Iverson testified at his deposition (in response to a question asking whether he had an opportunity to review an employee handbook while working at Deco Products) that "[i]f a person ever had a question, we were always given a handbook as they did updates." Def. App. 26; Pl. App. 29. He further stated that "[e]ach employee from what I believe got their own copy of any updated material." Def. App. 26. Iverson stated that he kept a copy of the employee handbook in his toolbox at work. Def. App. 26. The 2016 version of the employee handbook was in effect at the time of Iverson's termination. Def. App. 3. There is a place for an employee to sign and acknowledge receipt of the handbook (Def. App. 14), but no record of Iverson's signature exists. The general manager for Deco Products submitted an affidavit stating that Iverson was provided a copy of the 2016 version of the handbook and that he was not required to sign an acknowledgement of receipt of the handbook. Def. App. 3-4. Iverson did not cite to any evidence rebutting that he did not receive the 2016 version of the handbook. *See* Pl. Resp. SOF ¶ 3; Pl. App. 41-42 (Iverson does not deny receiving the 2016 version of the handbook in his affidavit).

Iverson initiated this lawsuit in December 2018. *See* Doc. 5. Iverson alleged five counts: (1) breach of contract based on the employee handbook; (2) age and sex discrimination under state and federal law; (3) "retaliatory discharge in violation of public policy"—for this count, Iverson did not allege that he engaged in any protected activity, but rather that Deco Products violated public policy by terminating him without following the procedure in the employee handbook, by failing to conduct a thorough investigation of the sexual-harassment complaint, by terminating his employment without good cause, and by discriminating against older male workers; (4) negligence based on Defendant's

4

failure to follow the employee handbook and conduct a thorough investigation of the sexual-harassment complaint; and (5) disability discrimination under state and federal law. *Id*. Deco Products moves for summary judgment on all counts. Docs. 17, 23. Iverson concedes Deco Products is entitled to judgment as a matter of law on his disability-discrimination claim but resists summary judgment on all other counts. Doc. 18 at 2.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant [a motion for] summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." For the plaintiff to avoid summary judgment, sufficient evidence must exist "on which the jury could reasonably find for the plaintiff." ***Olmsted v. Saint Paul Pub. Sch.***, 830 F.3d 824, 828 (8th Cir. 2016) (quoting ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 252 (1986)). The court "view[s] the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." ***Soo Line R.R. Co. v. Werner Enters.***, 825 F.3d 413, 418 (8th Cir. 2016) (quoting ***Bishop v. Glazier***, 723 F.3d 957, 960-61 (8th Cir. 2013)).

### A. Breach of Contract Based on the Employee Handbook

For his first cause of action, Iverson alleges breach of contract under Iowa law based on the provisions of an employee handbook. Under Iowa law, "employment relations are presumed to be at-will," and "if no employment contract exists, either party may terminate the relationship for any lawful reason at any time." ***Jones v. Lake Park Care Ctr., Inc.***, 569 N.W.2d 369, 374-75 (Iowa 1997). An exception to this general rule occurs "when an implied contract of employment is created by a handbook or

5

employee policy manual guaranteeing that discharge will occur only under certain circumstances." *Id.* at 375.

"The key to determining whether a contract has been created [by an employee handbook] is whether a reasonable employee upon reading the handbook would believe they had been guaranteed certain protections by their employer." *Id.* The existence of an offer (as required to form a unilateral contract) is determined objectively, not subjectively. ***Anderson v. Douglas & Lomason Co.***, 540 N.W.2d 277, 285 (Iowa 1995). Iowa courts consider the language of the provisions of the employee handbook when determining whether it constitutes an offer:

> (1) Is the handbook in general and the progressive disciplinary procedures in particular mere guidelines or a statement of policy, or are they directives? (2) Is the language of the disciplinary procedures detailed and definite or general and vague? . . . (3) Does the employer have the power to alter the procedures at will or are they invariable?

*Id.* at 286 (citations omitted). In addition, "[a] disclaimer can prevent the formation of a contract by clarifying the intent of the employer not to make an offer." *Id.* at 287. When examining disclaimers, Iowa courts consider: "First, is the disclaimer clear in its terms: does the disclaimer state that the handbook does not create any rights, or does not alter the at-will employment status? Second, is the coverage of the disclaimer unambiguous: what is the scope of its applicability?" *Id.* at 288.

Here, the employee handbook states in the section on sexual harassment:

> Every complaint about sexual harassment . . . will be promptly investigated . . . . The timing and specific nature of the investigation of any complaint will be determined by the Human Resource Manager or the designated investigator. . . . Because the circumstances of every complaint of sexual harassment are different, the Human Resource Manager will use discretion and flexibility in conducting an appropriate investigation of and formulating an appropriate response to each complaint, consistent with the Company's policy against sexual harassment. If an investigation indicates that a violation of this policy may have occurred, immediate and appropriate action will be taken. A person found to have committed a violation of this

6

> policy may be subject to a broad range of consequences, up to and including termination of employment.

Def. App. 11. Although the handbook provides that sexual-harassment complaints will be investigated, the handbook is vague as to the required scope of any such investigation and gives Deco Products discretion in disciplining sexual harassment. Similarly, the handbook contains a section titled "Disciplinary Guidelines," which provides that a violation of company policy—including sexual harassment—"may result in disciplinary measures that may, depending upon the circumstances and the discretion of the Company, include verbal or written warnings, suspension (with or without pay), or immediate discharge." Def. App. 12. In addition to this indefinite procedure, the disciplinary section contains a disclaimer, stating that Deco Products "retains discretion to take disciplinary action appropriate to the circumstances" and that the disciplinary measures in the handbook are "merely . . . a guide to the employee" and "not intended to create a contract or modify the employment at will relationship." *Id.* The employee handbook also contains disclaimers on the first and last pages, which state that employment with Deco Products is at will and that the employee handbook is not intended to create a contract between Deco Products and the employee. Def. App. 9, 14. The first and last pages of the employee handbook also state that Deco Products may change the policies in the handbook at any time. *Id.*

Viewed as a whole, a reasonable person reading the handbook would not believe that Deco Products intended to create a contract through the handbook. *See **Fesler v. Whelen Eng'g Co.***, 794 F. Supp. 2d 994, 1014-15 (S.D. Iowa 2011), *aff'd,* 688 F.3d 439 (8th Cir. 2012); ***Phipps v. IASD Health Servs. Corp.***, 558 N.W.2d 198, 203-04 (Iowa 1997); ***Anderson***, 540 N.W.2d at 287-89; ***Fogel v. Trs. of Iowa Coll.***, 446 N.W.2d 451, 455-56 (Iowa 1989); *cf.* ***Jones***, 569 N.W.2d at 375-76. The employee handbook itself and the disciplinary procedures are framed as guidelines, not directives; the sections on discipline and sexual harassment provide general information but not step-by-step directives; Deco Products retains the discretion to make changes to the policies

7

in the handbook at any time; and the handbook contains numerous disclaimers that make clear nothing in the handbook is meant to alter the employment at-will relationship. Accordingly, Deco Products is entitled to summary judgment on Iverson's breach-of-contract claim.

### B. Age and Sex Discrimination Under State and Federal Law

Iverson claims that his termination constituted age and sex discrimination under state and federal law. *See* Age Discrimination in Employment Act (ADEA), **29 U.S.C. § 623(a)(1)**; Title VII of the Civil Rights Act of 1964, **42 U.S.C. § 2000e-2(a)(1)**; Iowa Civil Rights Act (ICRA), **Iowa Code § 216.6(1)(a)**. Where, as here, no direct evidence of discrimination exists,[4] the burden-shifting framework of *McDonnell Douglas*[5] applies. ***Heisler v. Nationwide Mut. Ins. Co.***, 931 F.3d 786, 794 (8th Cir. 2019).[6]

> First, the plaintiff has the burden of making a prima facie case of discrimination. If she makes a prima facie case, the employer has the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action. If the employer meets this burden, then the plaintiff has the burden to produce evidence that the proffered nondiscriminatory reason is a pretext for discrimination. Despite this shifting of the burden

---

[4] Iverson does not contend direct evidence of discrimination exists. *See* Doc. 18-3 at 5. And as Deco Products notes, the statement made by Iverson's fellow toolmaker would not constitute direct evidence. *See* **Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.**, 444 F.3d 961, 966 (8th Cir. 2006) ("'[S]tray remarks in the workplace,' 'statements by nondecisionmakers,' and 'statements by decisionmakers unrelated to the decisional process' do not constitute direct evidence." (quoting **Radabaugh v. Zip Feed Mills, Inc.**, 997 F.2d 444, 449 (8th Cir. 1993))).

[5] **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973).

[6] The Eighth Circuit has recognized that "while [it] ha[s] applied *McDonnell Douglas* to ADEA claims when addressing them along with other discrimination claims, it is unclear whether *McDonnell Douglas* technically applies to the ADEA because the ADEA has a 'but-for' causation standard rather than the mixed motives standard used in other statutes." *Heisler*, 931 F.3d at 794. Because "a plaintiff who fails to meet the lower standard of Title VII or [the] ICRA necessarily fails to meet the ADEA's standard as well[,]" the Eighth Circuit has held that a court "need not reach the ADEA's separate burden if no claim survives *McDonnell Douglas*." ***Id.*** at 795.

of production, the "plaintiff at all times bears the 'ultimate burden of persuasion.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

*Id.* (bold emphasis added) (citations omitted).

Here, even if I assume that Iverson has established a prima facie case of discrimination (a fact I doubt), his claims still do not survive summary judgment. Deco Products states it terminated Iverson based on a female coworker's sexual harassment complaint against him. This is a legitimate, nondiscriminatory reason for terminating Iverson's employment. *See McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 862 (8th Cir. 2009); *Pambianchi v. Ark. Tech Univ.*, 95 F. Supp. 3d 1101, 1115-16 (E.D. Ark. 2015).

Thus, the burden shifts back to Iverson to "demonstrate a material question of fact" that Defendant's proffered reason for terminating him is a "pretext for discrimination." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (en banc). "[Iverson's] burden to show pretext 'merges with the ultimate burden of persuading the court that [he was] the victim of intentional discrimination.'" *Id.* at 1046 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). An employee may prove pretext in two ways:

> "First, a plaintiff may succeed 'indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Under this method, the employee must rebut the employer's "underlying factual claims" by establishing that the employer's explanation has no basis in fact.
>
> Second, the plaintiff may prove pretext "'directly by persuading the court that a [prohibited] reason more likely motivated the employer.'" Under this method, the employee rebuts "the employer's ultimate factual claim regarding the absence of [discriminatory] intent." The employee must demonstrate "that sufficient evidence of intentional [discrimination] exists for a jury to believe the plaintiff's allegations and find that the proffered explanation was not the true motivating explanation." Thus, the employee "may concede that the proffered reason for the [adverse action] *would have been* a sufficient basis for the adverse action while arguing that the employer's proffered reason was not the true reason for the action."

9

***Stallings v. Hussmann Corp.***, 447 F.3d 1041, 1052 (8th Cir. 2006) (first alteration in original) (citations omitted) (quoting ***Wallace v. DTG Operations, Inc.***, 442 F.3d 1112, 1120-21 (8th Cir. 2006)); *see also **Torgerson***, 643 F.3d at 1047.

Iverson admits that a female coworker made a sexual-harassment claim against him on the day of his termination. Pl. Resp. SOF ¶ 12. In his resistance to Defendant's summary-judgment motion, Iverson does not offer any specific evidence of pretext, instead stating generally that his termination occurred "under circumstances that allow a trier of fact to infer that unlawful discrimination occurred." Doc. 18-3 at 5; *see also* Doc. 18 at 2. It appears Iverson relies on the following evidence: (1) a younger individual replaced Iverson (it is unclear how much younger than Iverson this replacement was and whether this person was a male or female); (2) other men were not fired for engaging in sexual harassment (there is no evidence whether these men were younger or older than Iverson); and (3) a fellow toolmaker made a comment about Iverson's age about a year before Iverson's termination. This evidence is insufficient to establish that the proffered reason for terminating Iverson—that a second woman complained he engaged in sexual harassment—was pretextual. Accordingly, Deco Products is entitled to summary judgment on Iverson's claims for age and sex discrimination under federal and Iowa law.

### C. Discharge in Violation of Public Policy

Iverson claims that his termination violated public policy. Although employment relationships in Iowa are presumed to be at-will, an employer is not "allowed to fire employees for reasons that violate public policy." ***Phipps***, 558 N.W.2d at 202. "[T]he concept of public policy 'generally captures the communal conscience and common sense of [the state of Iowa] in matters of public health, safety, morals, and general welfare.'" ***Berry v. Liberty Holdings, Inc.***, 803 N.W.2d 106, 110 (Iowa 2011). "To be actionable, the discharge must be in violation of a clearly expressed public policy." ***Borschel v. City***

*of Perry*, 512 N.W.2d 565, 567 (Iowa 1994). The Iowa Supreme Court has recognized statutes, its constitution, and administrative regulations as "proper sources of public policy," and it has rejected "the existence of alleged public policies based in general and vague concepts of socially desirable conduct, internal employment policies, or private interests." *Berry*, 803 N.W.2d at 110.

Iverson's complaint alleged violations of public policy based on violations of the employee handbook and age and sex discrimination. A violation of the employee handbook cannot form the basis of a discharge-in-violation-of-public-policy claim. *Id.* Neither can Iverson repackage his unsuccessful discrimination claims as claims based on a violation of public policy. *See Borschel*, 512 N.W.2d at 567-68 ("[Iowa's] civil rights statute . . . preempts an employee's claim that the discharge was in violation of public policy when the claim is premised on discriminatory acts."). Iverson also argues that "[i]t is against public policy to terminate . . . an employee . . . based upon a mere accusation of one person, with no supporting eye witnesses, and a brief one[-]sided investigation." Doc. 18-3 at 4. He does not identify a source of this alleged public policy, and this general and vague concept of socially desirable conduct cannot form the basis of his claim. *See Berry*, 803 N.W.2d at 110. Accordingly, Deco Products is entitled to summary judgment on Iverson's claim that his discharge violated public policy.

### D. Negligence

Iverson claims that Deco Products negligently failed to investigate the sexual-harassment claim in violation of the employee handbook. As I have already discussed, Iverson's claim based on the employee handbook fails as a matter of law. To the extent that Iverson seeks to bring a standalone negligent-investigation claim, the Iowa Supreme Court has rejected the existence of such claims as it relates to at-will employees. ***Theisen v. Covenant Med. Ctr., Inc.***, 636 N.W.2d 74, 81-83 (Iowa 2001). Accordingly, Deco Products is entitled to judgment as a matter of law on Iverson's negligence claim.

11

### *III.  CONCLUSION*

Defendant's motion for summary judgment (Doc. 17) is **granted**. Judgment should be entered in favor of Deco Products.

**IT IS SO ORDERED** this 22nd day of January, 2020.

_Kelly K.E. Mahoney_
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa